## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-81357-CV-MIDDLEBROOKS/Brannon

AMERICAN BUILDERS
INSURANCE COMPANY,

      Plaintiff,

v.

SOUTHERN-OWNERS INSURANCE
COMPANY,

      Defendant.
_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon the Parties' Cross-Motions for Summary Judgment, filed on February 16, 2021. (DE 32; DE 35). The Motions are fully briefed. (DE 40; DE 43; DE 48; DE 51). For the following reasons, the Motions are denied.

## BACKGROUND AND UNDISPUTED FACTS[1]

This lawsuit between insurance carriers arises out of a construction site accident. Plaintiff American Builders Insurance Company ("Builders" or "Plaintiff") is suing Defendant Southern-Owners Insurance Company ("Southern" or "Defendant") for one count of "Common Law Bad Faith – Equitable Subrogation." (DE 1-1 at 3–9).

On April 1, 2019, Ernest Guthrie ("Mr. Guthrie") fell from the roof of a home that he was working on as a subcontractor and sustained severe injuries. (DE 34, Plaintiff's Statement of

---

[1] Although I have carefully considered each Party's Statement of Material Facts, for judicial economy purposes, I have primarily relied on Plaintiff's Statement of Materials Facts to establish the agreed-upon factual basis of this lawsuit. Where Defendant raises additional material, undisputed facts, I supplement this section with those or otherwise discuss Defendant's Statement of Material Facts, *infra*.

Material Facts ("Plaintiff's SOMF") ¶¶ 2–3, 8; DE 41, Defendant's Response to Plaintiff's Statement of Material Facts ("Response SOMF") ¶¶ 2–3, 8). Beck Construction of Central Florida, Inc. ("Beck"), also a subcontractor on the project, had hired Mr. Guthrie through his company, Ernest Guthrie LLC, to do the home's interior framing and carpentry. (Plaintiff's SOMF ¶¶ 1–3; Response SOMF ¶¶ 1–3).

Beck maintained a $1 million commercial general liability insurance policy with Builders, which was in effect on the date of the accident. (Plaintiff's SOMF ¶ 17; Response SOMF ¶ 17). Guthrie LLC had a $1 million commercial general liability insurance policy with Southern, also in effect on the date of the accident. (Plaintiff's SOMF ¶ 11; Response SOMF ¶ 11). Pursuant to an oral agreement between Guthrie LLC and Beck, Guthrie LLC's policy with Southern named Beck as an additional insured. (Plaintiff's SOMF ¶ 13; Response SOMF ¶ 13; DE 1-3 at 25). With respect to coverage, the Additional Insured Endorsement ("Endorsement") provides, in relevant part, that Beck "is an Additional Insured, but only with respect to liability arising out of 'your work' for that Additional Insured by or for you . . . ." (DE 1-3 at 25). With respect to priority of coverage, the Endorsement states

> This insurance is primary for the [Additional Insured], but only with respect to liability arising out of 'your work' for that person or organization by or for you. Other insurance available to the [Additional Insured] will apply as excess insurance and not contribute as primary insurance provided by this endorsement.

(*Id.*).

By letter dated April 29, 2019 and addressed to Beck, Mr. Guthrie, through his personal injury attorney, Stuart Cohen ("Mr. Cohen"), asserted a negligence claim against Beck. (DE 1-4 at 34–35). Beck notified Builders of the claim, and Builders initiated an investigation. (Plaintiff's SOMF ¶ 19; Response SOMF ¶ 19). Builders retained Attorney Geoff Lutz and an independent

2

adjusting firm, Engle Martin, to represent Beck and assist with the investigation of the claim. (Plaintiff's SOMF ¶ 20; Response SOMF ¶ 20; DE 34-2 ¶ 6).

On September 5, 2019, Mr. Cohen sent a 30-day time-limited demand letter to Builders, offering to settle Mr. Guthrie's claim for the $1 million policy limits based on his understanding that there existed no other insurance policy that may provide coverage. (Plaintiff's SOMF ¶ 23; Response SOMF ¶ 23; DE 34-3). The demand letter indicated that as a result of the fall, Mr. Guthrie is wheelchair-bound with no bladder or bowel control, or sexual function. (DE 34-3). As of the date of the demand letter, Mr. Guthrie's medical bills totaled approximately $400,000. (*Id.*).

Approximately five months after it received notice of Mr. Guthrie's claim, by letter dated September 12, 2019, Builders tendered the obligation to defend and indemnify Beck to Southern, the carrier of Guthrie LLC's policy, due to Beck's additional insured status under that policy. (Plaintiff's SOMF ¶ 25; Response SOMF ¶ 25). Builders attached the September 5, 2019 demand letter to this correspondence. (*Id.*). On September 25, 2019, counsel for Southern sent two letters to Mr. Cohen: One requested a list of information and documentation about the claim, while the other requested a 45-day extension until November 29, 2019 to respond to Mr. Guthrie's demand. (Plaintiff's SOMF ¶ 26; Response SOMF ¶ 26; DE 34-4). That same day, counsel for Southern sent letters to Builders and Beck acknowledging receipt of the tender and requesting the same information/documentation regarding the claim. (Plaintiff's SOMF ¶ 27; Response SOMF ¶ 27; DE 34-5). Two days later, Mr. Cohen furnished Southern with the information he had previously supplied to Builders, including medical records and bills in his possession; a medical bill summary totaling more than $376,000; Builder's policy for Beck; and two emails Mr. Cohen had sent to Builders regarding the claim. (Plaintiff's SOMF ¶ 28; Response SOMF ¶ 28; DE 34-6).

3

In late September 2019, Beck advised Builders that it also maintained a $1 million excess umbrella liability policy with Evanston Insurance Company ("Evanston"). (Plaintiff's SOMF ¶ 29; Response SOMF ¶ 29). The Evanston policy identifies only Builders as Beck's underlying commercial general liability carrier in the policy's Schedule of Underlying Insurance. (DE 33-4 at 13). It states that Evanston will

> pay those sums in excess of the limits shown in the Schedule of Underlying Insurance that [Beck] become[s] legally obligated to pay as damages because of injury to which this insurance applies, provided that the 'underlying insurance' also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

(*Id.* at 14).

On November 18, 2019, Mr. Cohen sent a revised settlement demand to Evanston wherein he stated

> Mr. Guthrie offers to execute a mutually agreeable complete release of Beck Construction in exchange for payment to Mr. Guthrie by both Evanston of its $1 million liability coverage limits and Builders of its $1 million liability coverage limits, for a total of $2 million, within thirty (30) days of this date, assuming that there are no other excess of umbrella coverages available to Beck Construction.

(Plaintiff's SOMF ¶ 32; Response SOMF ¶ 32; DE 34-8). Thus, the deadline for Evanston and Builders to respond to the demand was December 18, 2019. Although by the time of the November 18, 2019 demand, Mr. Cohen knew of Beck's additional insured status under the Southern policy, he did not direct any written or oral settlement demand to Southern. (Defendant's SOMF ¶¶ 33–34; Response to Defendant's SOMF ¶¶ 33–34).

On November 25, 2019, Southern agreed to provide Beck a conditional defense under a Reservation of Rights, stating that for several reasons, "there may not be coverage under the [Southern] Policy for some or all of the claims and/or damages alleged by Mr. Guthrie." (Plaintiff's

4

SOMF ¶ 33; Response SOMF ¶ 33; DE 1-4 at 39–41). The letter conveyed that although Beck had additional insured coverage under the Southern policy for liability arising out of Mr. Guthrie's work for Beck, Southern had not yet been able to speak with Beck, despite five attempts, to determine "whether Beck's liability arises out of Guthrie's work" and "the extent of Beck's liability, if any, in the first place." (DE 1-4 at 40). Southern also indicated that the Wrap-Up Insurance Exclusion or the Employer's Liability Exclusion may preclude coverage. (*Id.*).

That same day, counsel for Southern requested an extension of time from Mr. Cohen until December 20, 2019 to respond to Mr. Guthrie's September 5, 2019 demand letter. (Plaintiff's SOMF ¶ 35; Response SOMF ¶ 35; DE 1-4 at 34–9). Apparently, Mr. Cohen did not respond to Southern's request for an extension. (Defendant's SOMF ¶ 36; Response to Defendant's SOMF ¶ 36). On December 10, 2019, counsel for Southern met with and interviewed Russell Beck in the presence of his personal lawyer. (Plaintiff's SOMF ¶ 36; Response SOMF ¶ 36).

On December 10, 2019, Evanston tendered its $1 million excess policy limits to Mr. Guthrie. (Plaintiff's SOMF ¶ 37; Response SOMF ¶ 37). And on December 18, 2019, Builders tendered its $1 million policy limits to Mr. Guthrie. (DE 34-2 ¶ 18). That same day, Builders informed Southern that it had paid its policy limits to Mr. Guthrie and would "look to [Southern] for repayment of its policy limits under well-settled principles of equitable subrogation . . . based upon the primary additional insured coverage available to Beck Construction under the [Southern] Policy . . . ." (*Id.* ¶ 28).

Now, Builders seeks indemnity or reimbursement for the sum paid in the settlement of Mr. Guthrie's claim against Beck and attorney's fees and costs in connection with bringing the instant action. (DE 1-1 at 3–9).

5

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Bricklayers, Masons & Plasterers Int'l Union of Am., Loc. Union No. 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975) (citations omitted). "A fact is material for the purposes of summary judgment only if it 'might affect the outcome of the suit under the governing law.'" *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment. Thus, [the Court] do[es] not determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial." *Barnett v. PA Consulting Group, Inc*., 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted).

Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. If the non-moving party fails to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment is warranted. *Id.* at 322. The party moving for summary judgment bears the burden of establishing that there is insufficient evidence to support the non-moving party's case. *Id.* at 325. Moreover, "[t]he court must view all evidence in the light most favorable to the non-movant and must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1557–58 (11th Cir. 1990) (citation omitted).

## DISCUSSION

In this dispute between insurers, Builders asserts a common law bad faith equitable subrogation claim against Southern, seeking "damages . . . together with an award of attorney's fees and costs . . . ." (DE 1-1 at 7). Builders alleges that Southern acted in bad faith when it: (1) "failed to settle [Mr.] Guthrie's claim against [Beck] when it could and should have done so had it acted fairly and honestly toward" Beck and Builders; (2) failed "to promptly settle [Mr.] Guthrie's claim when the obligations to settle the claim became reasonably clear"; and (3) "failed to settle [Mr.] Guthrie's claim within its policy limits, thereby exposing [Beck and Builders] to an excess judgment." (*Id.* at 7–8 ¶¶ 32–34).

Florida common law recognizes a bad faith cause of action under a theory of equitable subrogation, by which an excess carrier may seek damages from a primary carrier for its "'bad faith refusal to settle the claim against their common insured.'" *See Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 900 (Fla. 2010) (quoting *U.S. Fire Ins. Co. v. Morrison Assurance Co.*, 600 So. 2d 1147, 1151 (Fla. 1st DCA 1992)). The reasoning goes that "the primary insurer should be held responsible to the excess insurer for improper failure to settle, since the position of the latter

7

is analogous to that of the insured when only one insurer is involved." *U.S. Fire Ins. Co.*, 600 So. 2d at 1151 (discussing *Ranger Ins. Co. v. Traveler's Indem. Co.*, 389 So. 2d 272 (Fla. 1st DCA 1980)). "Accordingly, when the primary insurer's bad-faith refusal to settle causes the excess insurer to pay an amount greater than it would have had to pay if the primary insurer had acted in good faith, the excess insurer is entitled to maintain a common law bad-faith claim against the primary insurer." *Perera*, 35 So. 3d at 900. This cause of action thus requires the existence of "a causal connection between the primary insurer's bad-faith actions and the loss or damage suffered by the excess insurer." *Id.* at 900–01.

When an insurer is handling claims against its insured—or as in this case, when a primary insurer is handling a claim on behalf of an excess insurer—the insurer/primary insurer "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Id.* at 898 (internal marks omitted). Such a

> good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.

*Boston Old Colony Ins. Co. v. Gutierrez,* 386 So. 2d 783, 785 (Fla.1980) (citations omitted).

### I. Duty to Defend

Builders first argues that it is entitled to summary judgment in its favor because Southern breached its duty to defend Beck by delaying in taking steps to provide a defense. (*See* DE 35 at 4–7). For instance, Builders asserts that between September 12, 2019 (the day Builders tendered

8

the claim to Southern) and October 18, 2019, Southern failed to contact Beck, despite Mr. Guthrie's time-limited demand set to expire on October 4, 2019.[2] (*Id.* at 4; DE 33-23; DE 34-7). Builders also points out that between November 25, 2019 (the day Southern notified Beck that it would provide a conditional defense) and December 18, 2019 (the day that Builders settled the claim), Southern did not retain counsel for Beck. (Plaintiff's SOMF ¶ 39; Response SOMF ¶ 39).

Builders next argues that it is entitled to equitable subrogation for its defense and indemnity payments on behalf of Beck because Southern "failed to timely assume the defense and indemnity obligations owed to Beck." (DE 35 at 8–9).[3] As a result, Builders contends that it "was forced to continue with Beck's defense and ultimately indemnify Guthrie to protect itself and its insured from a certain judgment in excess of the policy limits." (*Id.* at 9). Builder's maintains that I should direct Southern to reimburse Builders for its $1 million indemnity payment due to Southern's failure to defend Beck. (DE 35 at 14–15).

In its Response, Southern contends that Builders' breach of contract/breach of duty to defend argument is not properly before the Court because Builders did not plead such a claim in its Complaint. (DE 40 at 3). Rather, Southern maintains that the Complaint only asserts one claim for "Common Law Bad Faith – Equitable Subrogation" that focuses on Southern's failure to settle,

---

[2] The record reflects, however, that Southern initially contacted Beck on September 25, 2019. (DE 33-9).

[3] After Plaintiff filed its Motion for Final Summary Judgment, Defendant moved to strike Plaintiff's claim for attorney's fees and costs incurred in defending Beck throughout the claim handling process and Plaintiff's Exhibit A (DE 35-1) to its Motion for Summary Judgment because Plaintiff did not include such bills in its Rule 26(a)(1) Initial Disclosures but rather presented them for the first time at the summary judgment stage. (DE 37). In its Response to the Motion to Strike, Defendant agreed to withdraw Exhibit A (DE 35-1) and "its claim for attorney's fees incurred in defending Beck against Guthrie's claim." (DE 46). I subsequently entered an Order striking the claim and exhibit the Parties agreed should be stricken. (DE 47). As such, I do not consider Plaintiff's claim for reimbursement of its defense costs in ruling on its instant Motion.

9

not its failure to defend. (*Id.* at 3–6; *see generally* DE 1-1). In its Reply, Builders argues that it did allege that Southern breached its duty to defend even though Builders was not required to do so, "as the Court may make findings regarding [Southern's] coverage obligations to the extent necessary to resolve Plaintiff's equitable subrogation claim." (DE 51 at 2).

Again, in its Complaint, Builders brings one claim: "Common Law Bad Faith – Equitable Subrogation." (DE 1-1 at 5–6). Careful consideration of each allegation in the Complaint reveals that Builder's theory of bad faith liability revolves around Southern's failure to settle. (*E.g.,* DE 1-1 ¶ 26 ("[T]he demand to settle for $1 million was reasonable, and a reasonably prudent person when faced with the prospect of paying a judgment in excess of that sum, would do so under all the circumstances."), ¶ 27 ("[Southern] never made any offer to settle [Mr. Guthrie's] claim."), ¶ 32 ("[Southern] acted in bad faith when it failed to settle [Mr. Guthrie's] claim against its insured when it could and should have done so had it acted fairly and honestly toward its insured . . . ."), ¶ 34 ("[Southern] did not act reasonably when it failed to settle [Mr. Guthrie's] claim within its policy limits . . . ."), ¶ 35.c. ("Failing to accept the demand to settle [Mr. Guthrie's] claim within [Southern's] limits pursuant to the offers conveyed by [Mr. Guthrie] on November 18, 2019"), ¶ 35.e. ("Failing to attempt in good faith to make any reasonable or sufficient settlement offers in an effort to resolve these claims"), and ¶ 35.f. ("Failing to attempt in good faith to enter into settlement negotiations in an effort to resolve this claim"). The only allegations relating even remotely to a failure to defend state that Southern acted in bad faith by "[a]sserting defenses to coverage with little or no legal or factual basis" and "[f]ailing to agree to unconditionally defend and indemnify [Beck] for [Mr. Guthrie's] claim." (*Id.* ¶ 35.a.–b.).

Despite its near-exclusive emphasis in its Complaint on Southern's purported bad faith *failure to settle*, Builders devotes almost all of its summary judgment briefing to arguing that it is

10

entitled to repayment of its $1 million policy limits because Southern breached its *duty to defend* Beck under a claim of *equitable subrogation*. (DE 35 4–15). However, Builders pled a claim for *bad faith equitable subrogation*. In short, Builders is now arguing a claim that is absent from the Complaint. This misalignment between the Complaint and Plaintiff's Summary Judgment Motion is concerning.

Florida law recognizes a few different third-party common law bad faith claims in the insurance context, one of which is predicated on the doctrine of equitable subrogation. *Perera*, 35 So. 3d at 899–902. As explained above, under this type of bad faith claim, "an excess insurer has the right to 'maintain a cause of action . . . for damages resulting from the primary carrier's *bad faith refusal to settle* the claim against their common insured.'" *Id.* at 900 (emphasis added) (quoting *U.S. Fire Ins. Co. v. Morrison Assurance Co.,* 600 So. 2d 1147, 1151 (Fla. 1st DCA 1992)). "[W]hen the primary insurer's bad-faith *refusal to settle* causes the excess insurer to pay an amount greater than it would have had to pay if the primary insurer had acted in good faith, the excess insurer is entitled to maintain a common law bad-faith claim against the primary insurer." *Id.* at 900 (emphasis added). Thus, Florida common law conceives of a bad faith claim by an excess insurer against a primary insurer by virtue of equitable subrogation as arising due to the primary insurer's failure to settle when it could and should have done so under all of the circumstances had it acted fairly and honestly toward the excess carrier. Equitable subrogation, as opposed to bad faith equitable subrogation, is a distinct cause of action and/or basis for recovery under Florida law. *See, e.g.*, *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999). A claim for breach of contract for failure to defend is also a distinct cause of action. *See, e.g.*, *Lime Tree Village Community Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 731 So. 2d 638, 646 (Fla. 1999); *see also Aaron v. Allstate Ins. Co.*, 559 So. 2d 275, 277 (1990) (acknowledging "refusal to

defend" and "inadequate defense" as causes of action). Builders did not bring these theories of recovery forward until it filed its instant Motion for Final Summary Judgment. Because plaintiffs may not raise new claims at the summary judgment stage, *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004), I find that Builders' equitable subrogation claim, minus bad faith, and/or its breach of duty to defend claim are not properly before the Court and thus are not appropriate subjects for summary disposition. As this litigation progressed, if Builders' theory of liability and recovery evolved such that it departed from, or grew broader than, the claims raised in its Complaint, the proper procedure would have been to amend its Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. *See id.* Because it did not, to the extent that Plaintiff's Motion for Summary Judgment seeks adjudication of claims that are not the subject of its pleading, I decline to rule on them.

However, because Builders, impermissibly in my view, fixates on Southern's failure to defend Beck, and Southern thus responds to such arguments, I will make two remarks about the duty to defend. First, Southern contends that it could not have breached a duty to defend because no such duty was ever triggered under the Southern policy based on its plain language that Southern will have "the right and duty to defend the insured against any 'suit'" seeking damages for bodily injury or property damage. (DE 40 at 6–8). The Southern policy defines "suit" as a "civil proceeding," "arbitration proceeding," or "[a]ny other alternative dispute resolution proceeding." (*Id.* at 7–8). Southern's position is that because Mr. Guthrie never brought a "suit" against Beck, Southern's duty to defend Beck never arose. Because clear and unambiguous insurance policy provisions must be enforced as written and are not subject to judicial interpretation, *Siegle v. Progressive Consumers Ins. Co.*, 788 So.2d 355, 359 (Fla. 4th DCA 2001), I am inclined to find that Southern's duty to defend Beck as defined in the Southern policy did not arise under same.

However, the lack of triggering Southern's contractual duty to defend does not mean that Southern did not have a duty to investigate the claim brought against Beck in good faith. *See Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018) (requiring insurer to act "with the same haste and precision as if it were in the insured's shoes . . . to avoid an excess judgment").

Second, notwithstanding that the plain language of the Southern policy indicates that its duty to defend Beck did not arise, this point strikes me as irrelevant and moot, as Southern never refused to defend Beck but instead offered to conditionally defend Beck under a Reservation of Rights (DE 1-4 at 39–41), which is permissible under Florida law and does not equate to a breach of the duty to defend. *See First American v. Nat'l Union Fire Ins.*, 695 So.2d 475, 477 (Fla. 3d DCA 1997).

These findings bring us back to the heart of this lawsuit as pled, which is whether Southern handled Mr. Guthrie's claim against Beck in good faith and whether it could and should have settled Mr. Guthrie's claim against Beck but failed to do so. In essence, the relevant inquiry is whether Southern acted reasonably in evaluating and attempting to settle. *See Cruz v. Am. United Ins. Co.*, 580 So. 2d 311, 312 (Fla. 3d DCA 1991).

**II. Bad Faith Equitable Subrogation**

"[T]he gravamen of what constitutes bad faith is whether under all the circumstances an insurer failed to settle a claim against an insured when it had a reasonable opportunity to do so." *Contreras v. U.S. Sec. Ins. Co.*, 927 So. 2d 16, 20 (Fla. 4th DCA 2006). Accordingly, Florida courts have "generally reserve[d] the question of bad faith for the jury." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (F1a. 2004); *see also Boston Old Colony*, 386 So. 2d at 785 ("The question of failure to act in good faith with due regard for the interests of the insured is for the jury."). The "critical inquiry in a bad faith [case] is whether the insurer diligently, and with the same haste and

13

precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Harvey*, 259 So. 3d at 7. "The damages claimed by an insured in a bad faith case 'must be caused by the insurer's bad faith.'" *Id.* (quoting *Perera*, 35 So. 3d at 902).

Southern argues that it did not handle Mr. Guthrie's claim against Beck in bad faith by failing to settle because Southern never had a reasonable opportunity to settle the claim against Beck for its policy limits. (DE 32 at 9). Southern relies on two facts to support its position. First, Southern states that Mr. Guthrie, through his attorney Mr. Cohen, never made a settlement demand *to Southern*, even after he became aware of the Southern policy. (Defendant's SOMF ¶¶ 30–34; Response SOMF ¶¶ 30–34). Instead, Mr. Guthrie's September 5, 2019 demand was directed to Builders alone, contingent on no coverage being available to Beck through any other policy, and the November 18, 2019 demand was directed to Builders and Evanston. (Defendant's SOMF ¶¶ 13, 28; Response SOMF ¶¶ 13, 28). It is undisputed that Mr. Cohen never directed a settlement demand, either written or verbal, to Southern. (Defendant's SOMF ¶¶ 33–34; Response SOMF ¶¶ 33–34). Second, Southern asserts that it did not receive the November 18, 2019 demand from Builders until the December 18, 2019 response deadline. (Defendant's SOMF ¶¶ 45–46; Response SOMF ¶¶ 45–46). Correspondence from Builders to Southern dated December 18, 2019 advises that both Builders and Evanston had tendered their policy limits to Mr. Guthrie. (Defendant's SOMF ¶ 47; Response SOMF ¶ 47). In dispute, however, is whether Southern learned of and/or consented to Builders' $1 million tender before it occurred. (Defendant's SOMF ¶ 48; Response SOMF ¶ 48). Builders states that before tendering its policy limits on December 18, 2019, it notified Southern of its intention to do so if Southern refused. (Response SOMF ¶ 48; DE 43-1 ¶¶ 22–23). Southern contends that it did not consent to Builder's tender. (Defendant's SOMF ¶ 48; DE 33-22 ¶ 28).

14

The fact that Mr. Guthrie did not directly demand tender of Southern's policy limits does not necessarily mean that Southern handled Mr. Guthrie's claim in good faith. *See, e.g.*, *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12 (Fla. 3d DCA 1991) ("Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations."). Even if no demand was directed to Southern itself, Southern knew of Mr. Guthrie's claim as of September 12, 2019 when Builders tendered the defense and indemnity obligation. Save for completion of its own investigation of the claim, there appears to have been nothing to preclude Southern from affirmatively engaging in settlement negotiations with Mr. Guthrie or making haste to respond to the September 5, 2019 settlement that it did know about. I find that whether under all of the circumstances of this case, Southern should have settled Mr. Guthrie's claim in advance of or by December 18, 2019 is a question best suited for a jury to decide after weighing the evidence and resolving all relevant credibility determinations.

Moreover, I find that a factual dispute exists, the resolution of which is relevant to the determination of this ultimate question. For instance, the Parties dispute what Southern knew with respect to the November 18, 2019 demand in advance of Builders having tendered its policy limits. On the one hand, if Southern did not know of this opportunity to settle until after the fact, then Southern would not have had a reasonable opportunity to settle pursuant to that demand and thus could not be said to have made a decision in bad faith. On the other hand, if Southern *did* know of the November 18, 2019 demand in advance of Builders having accepted same but affirmatively declined to tender its policy limits or attempt to settle, then a reasonable jury might find that particular fact determinative of bad faith. I cannot resolve questions regarding what Southern knew and when at this summary judgment stage.

15

As to proximate causation, Southern contends that it is entitled to judgment because "there is no evidence that [Southern's] actions caused Builders to pay [Mr. Guthrie's] demand for Builders['] $1 million policy limits." (DE 32 at 4). Causation is a necessary element of a bad faith equitable subrogation claim—that is, the claimed damages must have been caused by the insurer's bad faith failure to settle, *Perera*, 35 So. 3d at 902. Southern maintains that Builders would have had to pay $1 million regardless of any action Southern took because Builders' policy was primary to Evanston's excess policy. (DE 32 at 10). Because Mr. Guthrie demanded $1 million from Evanston and $1 million from Builders, to satisfy the November 18, 2019 demand, Builder's would have had to tender its limits before Evanston's payment obligation would have been triggered to satisfy the $2 million demand. (*Id.* at 11–12). Southern contends that Builder's failure to put forth any evidence that Mr. Guthrie would have accepted Southern's $1 million tender of its policy limits in addition to Evanston's policy limits is fatal to Builder's bad faith equitable subrogation action. I acknowledge these arguments but decline to determine causation, a question ordinarily reserved for a jury, on summary judgment based on speculation of what would or could have happened had the circumstances unfolded differently.

Because the Parties failed to demonstrate the absence of a genuine issue of material fact regarding whether Southern violated its duty of good faith, I will deny the cross-motions for Summary Judgment. The Florida Supreme Court has acknowledged that "the issue of bad faith is ordinarily a question for the jury." *See Berges*, 896 So. 2d at 672. Though courts have at times resolved the matter at the summary judgment stage, a factually disputed situation such as the present one does not allow me to determine whether under all the circumstances, Southern's conduct does or does not constitute bad faith as a matter of law. On this record, a jury should

16

determine whether Southern's failure to settle before or on December 18, 2019 amounted to bad faith.

### III. Consent and Employer Liability Exclusion

In addition to moving for summary judgment, Southern seeks resolution of two affirmative defenses in its Motion. Southern contends that Builder's is not entitled to repayment of its $1 million tender because it materially breached a term of the Southern policy by entering into a settlement without Southern's consent. Because Builders, as the excess insurer, "stands in the shoes" of the insured with respect to its claim against Southern, the rights and obligations of the insured, Beck, inure to Builders. *See Vigilant Ins. Co. v. Cont'l Cas. Co.,* 33 So. 3d 734, 738 (Fla. 4th DCA 2010). The Southern policy provides in pertinent part that the insured must "immediately send [Southern] copies of any correspondence, demands, notices, summonses or papers in connection with any claim or 'suit'." (DE 33-1). It continues that "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without [Southern's] consent." (*Id.*). The Southern policy also states that "no person or organization has a right [t]o sue [Southern]" under the commercial general liability policy "unless all of [the] terms have been fully complied with." (*Id.*). As explained above, the Parties dispute whether Southern knew of or consented to Builders' tender of its policy limits. (Defendant's SOMF ¶ 48; Response to Defendant's SOMF ¶ 48; DE 43-1 ¶¶ 22–23; DE 33-22 ¶ 28). Accordingly, with this material fact in dispute, I cannot resolve on summary judgment whether this defense is viable.

Finally, Southern asserts a defense to coverage under the policy's Employer Liability Exclusion. (DE 32 at 17). The exclusion provides, in relevant part, that coverage does not apply to: "'Bodily injury' to [a]n 'employee' of *any insured* arising out of and in the course of employment

17

by any insured. This exclusion applies: [w]hether any insured may be liable as an employer or in any other capacity." (DE 33-1 at 43–44 (emphasis added)). Pursuant to this exclusion, Southern argues that because Mr. Guthrie was an employee of Ernest Guthrie LLC, an insured under the Southern policy, and suffered bodily injuries arising out of his employment by his LLC, this exclusion results in no coverage being available to Mr. Guthrie under the commercial general liability policy he obtained for his company. (DE 32 at 18).

Southern directs the Court to authorities holding that nearly identical Employer Liability Exclusion provisions did not bar coverage where a severability or separation of insureds provision exists, as such provisions "create separate insurable interests in each individual insured under a policy, such that the conduct of one insured will not necessarily exclude coverage for all other insureds." *Evanston Ins. Co. v. Design Build Interamerican, Inc.,* 569 F. App'x 739, 742 (11th Cir. 2014); *see also Taylor v. Admiral Ins. Co.*, 187 So. 3d 258 (Fla. 3d DCA 2016). I am persuaded by the reasoning in these authorities and thus decline to find that the Employer Liability Exclusion bars coverage for Mr. Guthrie's claim as a matter of law.

### III. Request for Attorney's Fees under Fla. Stat. § 627.428

In its Motion for Summary Judgment, Builders contends that it is entitled to recover the attorney's fees incurred in this litigation pursuant to Fla. Stat. § 627.428. (DE 35 at 16–18). However, I find this request to be premature. "'The fundamental rule in Florida has been that an 'award of attorneys' fees is in derogation of the common law and that statutes allowing for the award of such fees should be strictly construed.'" *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 573 (11th Cir. 1991) (quoting *Roberts v. Carter*, 350 So. 2d 78, 78–79 (Fla. 1977)). As such, "[t]he trial court's jurisdiction to award an attorney fee to an insured is dependent upon the conditions imposed by the [relevant] statute." *AIU Ins. Co. v. Coker*, 515 So. 2d 317, 318 (Fla. 2d DCA 1987).

A precondition to an award of such fees is the entry of a judgment against the insurer. *See Travelers Indem. Co. v. Chisholm*, 384 So. 2d 1360, 1361 (Fla. 2d DCA 1980). Specifically, section 627.428 provides:

> (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court . . . shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
> . . .
>
> (3) When so awarded, compensation or fees of the attorney shall be included in the judgment or decree rendered in the case.

*Id.* Further Rule 54(d)(3)(B)(i) provides that "[u]nless a statute or a court order provides otherwise, the motion [for attorney's fees] must be filed no later than 14 days *after the entry of judgment*." Rule 54(d)(3)(B)(i) (emphasis added). Here, the Court has not yet entered judgment. Thus, Builders' request for an award of attorney's fees and costs incurred in prosecuting this action is premature, and I thus will not address the request at this time.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

(1)    Plaintiff's Motion for Final Summary Judgment (DE 35) is **DENIED**.

(2)    Defendant's Motion for Final Summary Judgment (DE 32) is **DENIED**.

  (3) Given that I did not rely upon Exhibit A to Defendant's Reply to Plaintiff's Additional Facts (Affidavit of Jessica Gregory, Esq.) (DE 49-1) in deciding these Motions, Plaintiff's Motion to Strike Exhibit "A" to Defendant's Reply to Plaintiff's Additional Facts in Response to Defendant's Statement of Undisputed Facts (DE 57) is **DENIED AS MOOT**.

**SIGNED** in Chambers at West Palm Beach, Florida, this 30th day of April, 2021.

                 Donald M. Middlebrooks
                 United States District Judge

cc: Counsel of Record