IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 9:20-cv-81357

AMERICAN BUILDERS
INSURANCE COMPANY,

      Plaintiff,

v.

SOUTHERN-OWNERS
INSURANCE COMPANY,

      Defendant.

_____/

## PROPOSED JURY INSTRUCTIONS

The instructions proposed by Plaintiff, to which the Defendants object, are in *italic*. The instructions proposed by Defendants, to which Plaintiff objects, are **bold faced.**

Welcome. The clerk will now administer your oath.

<u>Oath of Jurors Before Voir Dire</u>: Do you solemnly swear that you will answer truthfully all questions asked of you as a prospective juror?

## PRELIMINARY INSTRUCTIONS BEFORE TRIAL

Ladies and Gentlemen:

You have now been sworn as the Jury to try this case.  By your verdict you will decide the disputed issues of fact.

I will decide all questions of law and procedure that arise during the trial, and, before you retire to the jury room at the end of the trial to deliberate upon your verdict and decide the case, I will explain to you the rules of law that you must follow and apply in making your decision.

The evidence presented to you during the trial will primarily consist of the testimony of the witnesses, and tangible items including papers or documents called "exhibits."

**Transcripts Not Available**.    You should pay close attention to the testimony because it will be necessary for you to rely upon your memories concerning what the testimony was.   Although, as you can see, the Court Reporter is making a stenographic record of everything that is said, typewritten transcripts will not be prepared in sufficient time or appropriate form for your use during your deliberations and you should not expect to receive them.

**Exhibits Will Be Available**.    On the other hand, any exhibits admitted in evidence during the trial <u>will</u> be available to you for detailed study, if you wish, during your

deliberations.  So, if an exhibit is received in evidence but is not fully read or shown to you at the time, don't be concerned because you will get to see and study it later during your deliberations.

**Notetaking – Permitted**.    If you would like to take notes during the trial you may do so.  On the other hand, of course, you are not required to take notes if you do not want to.  That will be left up to you, individually.

If you do decide to take notes, do not try to write everything down because you will get so involved in note taking that you might become distracted from the ongoing proceedings.  Just make notes of names, or dates and places - - things that might be difficult to remember.

Also, your notes should be used only as aids to your memory, and, if your memory should later differ from your notes, you should rely upon your memory and not your notes.

If you do not take notes, you should rely upon your own independent recollection or memory of what the testimony was and you should not be unduly influenced by the notes of other Jurors.  Notes are not entitled to any greater weight than the recollection or impression of each Juror concerning what the testimony was.

During the trial you should keep an open mind and should avoid reaching any hasty impressions or conclusions.  Reserve your judgment until you have heard <u>all</u> of the testimony and evidence, the closing arguments or summations of the lawyers, <u>and</u>

my instructions or explanations to you concerning the applicable law.

Because of your obligation to keep an open mind during the trial, coupled with your obligation to then decide the case only on the basis of the testimony and evidence presented, you must not discuss the case during the trial in any manner among yourselves or with anyone else, nor should you permit anyone to discuss it in your presence; and you should avoid reading any newspaper articles that might be published about the case. You should also avoid seeing or hearing any television or radio comments about the trial.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social-networking websites such as Facebook, MySpace, LINKEDIN, Instagram, Snap Chat, and Twitter. You also shouldn't Google or search online or offline for any information about the case, the parties, or the law.

From time to time during the trial I may be called upon to make rulings of law on objections or motions made by the lawyers. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. And if I should sustain an objection to a question that goes unanswered by a witness, you should not guess or speculate what the answer might have been nor should you draw any inferences or conclusions from the question itself.

During the trial it may be necessary for me to confer with the lawyers from time to time out of your hearing with regard to questions of law or procedure that require consideration by the court or judge alone. On some occasions you may be excused from the courtroom for the same reason. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**<u>Credibility of witnesses</u>:**

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

- any bias or prejudice the witness may have;

- any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

**Description of the case:**

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions.

**Plaintiff's position:**

This case arises out of an underlying claim by Ernest Guthrie ("Guthrie"), the owner and only employee of Guthrie LLC, for injuries sustained when he fell from a roof while performing work on a construction site. At the time of the incident, Guthrie LLC was working as a subcontractor for Beck Construction of Central Florida, LLC ("Beck"). In April 2019, shortly after the incident, Guthrie's counsel contacted American Builders Insurance Company ("ABIC"), Beck's liability carrier, to raise a claim of negligence against Beck for Guthrie's injuries.

On September 5, 2019, Guthrie's counsel sent ABIC a thirty-day time limit demand, demanding payment of its $1 million policy limits. On September 12, 2019, ABIC forwarded this demand to Southern-Owners, and demanded that Southern-Owners assume the defense and indemnity for Beck on the basis that Southern-Owners policy is primary for Beck, as an Additional Insured under the liability policy issued by Southern-Owners to Ernest Guthrie, LLC (the company owned by Mr. Guthrie).

After investigating Guthrie's claim in bad faith for more than two (2) months, Southern-Owners ultimately agreed to defend Beck under a Reservation of Rights to deny coverage based on certain policy exclusions. *However, Southern never had any facts to support such exclusions and now admits it had a duty to defend Beck as Guthrie's allegations had the potential to trigger coverage. However, even after agreeing to furnish Beck a conditional defense, Southern-Owners never actually assumed Beck's defense.* [1]

On December 10, 2019, Evanston Insurance Company, Beck's excess carrier, tendered their policy limits to Guthrie to settle his claim and obtain a release for Beck. On December 18, 2019, ABIC informed Southern-Owners that ABIC intended to tender its limits to Guthrie in the absence of SOIC tendering its limits to protect Beck. Southern-Owners remained silent despite ABIC's warning that it would seek reimbursement of its payment under the equitable subrogation doctrine. ABIC now

---

[1] Southern-Owners objects to the inclusion of this argument based upon this Court's ruling on Summary Judgment [DE 64] and Southern-Owners Motion in Limine regarding statements pertaining to Southern-Owners duty to defend.

seeks reimbursement for the $1 Million it paid to Guthrie on Southern-Owner's behalf.

**Defendant's position:**

Southern-Owner's position is that upon receiving notice of this claim, it promptly began its investigation in order to evaluate questionable liability issues and potential coverage issues. Mr. Guthrie never made any demands to Southern-Owners. All of the demands made by Mr. Guthrie demanded payment of $1 million from Builders. There was never an opportunity for Southern-Owners to settle Mr. Guthrie's claims within the Southern-Owner's $1 million policy limits. Thus, there were no actions on the part of Southern-Owners that would constitute bad faith.

Furthermore, it is Southern-Owner's position that no actions on the part of Southern-Owners caused Builder's to have to pay any monies it otherwise should not have had to pay. The relevant demand, the November 19, 2019 demand, demanded payment of $1 million from Builders and $1 million from Evanston. The only way the demand could be met was with payment of $1 million from Builders and $1 million from Evanston.

Lastly, the Southern-Owner's policy provides that no insured may assume any obligation or make a payment without Southern-Owner's consent. Builders, standing in the shoes of Beck Construction, breached the policy by advising Mr. Guthrie that it would issue payment of $1 million, in response to the November 18, 2019, demand, prior to notifying Southern-Owners of the demand, and without obtaining Southern-Owner's consent. Therefore, Southern-Owners has no further obligations under its policy.

**<u>Facts Determined by the Court or Agreed to by the Parties:</u>**

The parties have agreed and the Court now instructs you that:

1. Southern-Owners issued a Tailored Protection Policy with Commercial General Liability Coverage to Ernest Guthrie, LLC, policy #182382-72659139-19, with each occurrence limits of $1 million.

2. The policy describes the business of Guthrie LLC as a "Framing Subcontractor" doing "Contractors/Subcontracted work in connection with building construction, reconstruction, repair or erection of one- or two-family dwellings. (ECF No. 1- 2; p. 3).

3. Beck Construction of Central Florida, Inc. ("Beck Construction:") is listed as an Additional Insured on the Southern-Owner's policy, but only with respect to liability arising out of Ernest Guthrie, LLC's work for Beck Construction.

4. The Additional Insured Endorsement provides:
> The person or organization shown in the above Schedule is an
> Additional Insured, but only with respect to liability arising out of "your
> work" for that Additional Insured by or for you:

> 1. If required in a written contract or agreement or

> 2. If required by an oral contract or agreement only if a Certificate of
> Insurance was issued prior to the loss indicating that the person or
> organization was an Additional Insured.

5. The Southern-Owner's Policy provides:

SECTION I - COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY
DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes
legally obligated to pay as damages
  because of "bodily injury" or "property damage"
  to which this insurance applies. We will have
  the right and duty to defend the insured against
  any "suit" seeking those damages. We may at
  our discretion investigate any claim or "occurrence"
  and settle any claim or "suit" that may
result.

6. *The Southern-Owner's Policy defines "suit" as:*

*21. "Suit" means a civil proceeding in which damages*
*because of "bodily injury", "property damage",*
*"personal injury" or "advertising injury" to which this*
*insurance applies are alleged. "Suit" includes:*

*a. An arbitration proceeding in which such damages*
*are claimed and to which the insured must*
*submit or does submit with our consent; or*

*b. Any other alternative dispute resolution proceeding*
 *in which such damages are claimed and to*
*which the insured submits with our consent.*

7. Under Section IV- Commercial General Liability Conditions, the Southern-Owner's Policy provides:

> SECTION IV - COMMERCIAL GENERAL LIABILITY
> CONDITIONS
>
> 2. Duties In The Event Of Occurrence, Offense,
> Claim Or Suit
>
> c. You and any other involved insured must:
>
>> (1) immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit".
>
> d. No insured will, except at that insured's own
> cost, voluntarily make a payment, assume any
> obligation, or incur any expense, other than for
> first aid, without our consent.
>
> 3. Legal Action Against us
>
> No person or organization has a right under this Coverage Part:
>
> . . .
>
> b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

8. *The Southern-Owner's policy contains the following Endorsement:*

*EMPLOYER'S LIABILITY EXCLUSION (form 55513)*

*1. SECTION I - COVERAGES is amended as follows.*
*Under COVERAGE A. BODILY INJURY AND*
*PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS,*
*exclusion e. Employer's Liability is deleted*
*and replaced by the following exclusion.*

*e. Employer's Liability*
*[This insurance does not apply to]*

*"Bodily injury" to:*

*(1) An "employee" of any insured arising out of
and in the course of employment by any insured; . . .*

*This exclusion applies:*

*(1) Whether any insured may be liable as an
employer or in any other capacity; (emphasis added).*

9. Builders Insurance Group issued a General Liability Policy of insurance to Beck Construction, policy #PKG 0247361 01, with each occurrence limits of $1 million.

10. The "Other Insurance" provision of the Builders policy provides that its insurance is excess over, "Any other primary insurance available to you covering liability for damages arising out of the premises or operations.... for which you have been named an additional insured."

11. Evanston Insurance Company ("Evanston") issued a Commercial Excess Liability Policy to Beck Construction, policy #EZXS3000480, with each occurrence limits of $1 million.

12. The Builder's Policy is listed on the "Schedule of Underlying Insurance" for the Evanston Excess Policy.

13. At the end of April 2019, Builders was put on notice of a claim by Ernest Guthrie, against Beck Construction, arising out of a construction accident that occurred on April 1, 2019.

14. At the time of the construction incident, Ernest Guthrie was an employee of Ernest Guthrie, LLC, and Beck Construction had hired Ernest Guthrie, LLC, to perform framing work on a construction project.

15. On September 5, 2019, Stuart Cohen, Esq., counsel for Ernest Guthrie, sent a thirty-day time limit demand to Builders, demanding payment of Builders $1 million policy limits, in exchange for a release of claims against Beck Construction.

16. The demand letter describes Guthrie's version of the accident, advising that he believes liability rests with Beck. Cohen advised that Guthrie is

wheelchair bound; will never walk again and will have no bladder, bowel, or sexual function for the rest of his life. Cohen asserted that he believed the trial value of Guthrie's claim was $4M-$5M, considering Guthrie's current medical bills of almost $400,000, together with the projected cost of his future medical care.

17. The September 5, 2019, demand was conditioned upon their being no other insurance available to Beck Construction.

18. On September 12, 2019, Builders sent correspondence to Southern-Owners, which purported to tender the defense and indemnity of Beck Construction to Southern-Owners, and attached a copy of the September 5, 2019, demand that was sent to Builders.

19. The September 12, 2019, letter was Southern-Owner's first notice of this claim.

20. On September 25, 2019, Southern-Owners sent correspondence to counsel for Mr. Guthrie, advising that 1) Southern-Owners issued a policy to Ernest Guthrie, LLC, 2) Builders had just forwarded Southern-Owners his September 5th demand and requested that Southern-Owners defend and indemnify Beck, and 3) requesting an extension of time until November 29, 2019, to respond to the demand. Additionally, Southern-Owners sent correspondence requesting that he provide various documents pertaining to the claim, accident, and project.

21. On September 25, 2019, Southern-Owners, sent correspondence to Builders requesting copies of all documents related to this claim, accident, and project.

22. On September 25, 2019, Southern-Owners, sent correspondence to Beck Construction requesting copies of all documents related to this claim, accident, and project.

23. On September 27, 2019 Guthrie's counsel furnished SOIC with the information he previously furnished Builders including:

- Medical records and bills in his possession;
- A medical bill summary totaling more than $376,000;
- Builders policy for Beck;
- Counsel's May 24, 2019 email to Builders providing an initial description of the accident and injuries;

• Counsel's June 11, 2019 email to Builders answering collateral source questions and providing additional information about the incident.

24. On September 27, 2019, Builders sent email correspondence to counsel for Mr. Guthrie, requesting an extension of time on the demand until November 4, 2019.

25. On October 2, 2019, counsel for Mr. Guthrie sent email correspondence to Builders, agreeing to the requested extension, but advising "if there is additional [insurance] coverage available. . . then the Guthries will only execute a release that preserves their rights and/or ability to pursue claims against Beck Construction and Ernest Guthrie, LLC to the extent of any other available primary and/or umbrella liability insurance coverages available to either Beck Construction and/or Ernest Guthrie, LLC."

26. On October 4, 2019, Southern-Owners sent correspondence to Stuart Cohen, counsel for Mr. Guthrie, with a preliminary response to his demand, noting that he had not responded to its prior requests for an extension on the demand, and noting that it was in need of additional time to gather and review records and investigate the claim.

27. On October 14, 2019, counsel for Builders sent correspondence to counsel for Mr. Guthrie, advising that "Builders stands ready to pay its $1 million for a full release of "Beck Construction . . .It is incapable of doing so, however, because the terms of your letter dated September 5th have changed. . .You have since changed that to offer a "partial release" for tender of Builders limits . . .Consequently, by the changes in terms and conditions outlined, there is no real opportunity to settle this claim afforded to Builders. . ."

28. On October 18, 23, 29, and November 25, 2019, counsel for Southern-Owners made requests to counsel for Beck to set a meeting with someone from Beck Construction in order to gather information regarding the claim and incident as part of its investigation.

29. Counsel for Beck did not respond with dates of availability for a meeting for over a month, until November 25, 2019.

30. On November 18, 2019, counsel for Mr. Guthrie sent a thirty-day time limit demand to Evanston, which demanded payment of $1 million under the Evanston policy and $1 million under the Builders policy. The deadline for the demand was December 18, 2019.

31. The November 18, 2019, demand does not mention the Southern-Owner's policy.

32. Southern-Owners was not copied on this November 18, 2019 demand.

33. Builders was not copied on this November 18, 2019 demand.

34. Mr. Cohen, as counsel for Ernest Guthrie, never sent any demand letters to Southern-Owners or its counsel, in regards to Mr. Guthrie's claim against Beck Construction.

35. On November 25, 2019, Southern-Owners sent correspondence to counsel for Mr. Guthrie, requesting an extension on the September 5, 2019, demand until December 20, 2019, to allow Southern-Owners time to speak with someone from Beck Construction.

36. On November 25, 2019, Southern-Owners sent correspondence to Builders, responding to its September 12th tender letter, advising it would provide a defense to Beck Construction under a reservation of rights once it completed its investigation.

37. The November 25, 2019, letter, advised Builders that Southern-Owners had requested an extension on the September 5, 2019, demand until December 20, 2019.

38. On November 25, 2019, Southern-Owners sent correspondence to counsel for Beck Construction, advising that it would agree to provide a defense to Beck Construction under a reservation of rights.

39. On December 10, 2019, Evanston tendered its $1 million policy limits to Mr. Guthrie.

40. On December 10, 2019, counsel for Southern-Owners met with Russell Beck, for the first time, to obtain information regarding the project, incident, and relationship with Mr. Guthrie.

41. On December 10, 2019, Builders first learned of Guthrie's November 18, 2019 demand letter.

42. On December 17 or 18, 2019, Builders tendered its $1 million policy limits to Mr. Guthrie.

43. On December 17, 2019, Southern-Owners counsel advised Southern-Owners that based upon Mr. Beck's statement, there appeared to be strong liability defenses for Beck Construction.

44. On December 18, 2019, Builders sent correspondence to Southern-Owners, enclosing a copy of the November 18, 2019, time limit demand that was sent to Evanston.

45. December 18, 2019, was the first time that Southern-Owners was put on notice of the November 18, 2019, demand.

46. *As of December 18, 2019, Southern-Owners had not retained defense counsel, for Beck Construction, or assumed the defense being provided by Builders.*

47. At no point in time was there ever a lawsuit filed by Guthrie against Beck Construction.

48. *At no time did SOIC send Beck an "excess letter", advising of settlement opportunities, the probable outcome of litigation, warning of an excess judgment, or any steps it might take to avoid the same.*

49. The December 18, 2019, letter advises that Builders and Evanston have each tendered their $1 million policy limits to Mr. Guthrie.

50. Neither Builders nor Beck Construction ever obtained Southern-Owner's consent before issuing payment of $1 million in response to the November 18, 2019, demand.

51. On December 20, 2019, Guthrie executed a Release in favor of Beck, Builders and Evanston in exchange for its collective $2M payment.

52. *Southern-Owners investigation is absent for speaking with its named insured, Guthrie, regarding the accident.*

53. *The Employer liability exclusion in Southern's policy does not bar coverage for Beck.*[2]

---

[2] Numbers 1-52 are identical to the stipulated facts in the parties' previously submitted joint pre-trial stipulation. However, in light of the rulings in this Court's Order on summary judgment, Southern-Owners now objects to the admissibility of some of these facts. Numbers 53-59 are not part of the parties' previously submitted joint pre-trial stipulation, and Southern-Owners does not stipulate to these facts or their admissibility.

54. *SOIC owed Beck a duty to defend as an additional insured under the policy as the allegations lodged against Beck had the potential to trigger coverage under its policy.*

55. *SOIC never determined the priority of coverage between its policy and ABIC's.*

56. *SOIC never determined whether the Employer Liability Exclusion applies.*

57. *SOIC never investigated or evaluated the extent of Guthrie's damages.*

58. *SOIC never had any facts to dispute that Beck's liability arose from Guthrie's work.*

59. *Beck never had any facts to dispute Beck is an additional insured under SOIC's policy.*

**<u>Burden of proof:</u>**

In this case each party has the responsibility to prove certain issues by a "preponderance of the evidence." This is sometimes called the "burden or proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that a claim or contention is more likely true than not true.

When more than one claim is involved, and when more than one defense is asserted, you should consider each claim and each defense separately; but in deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have

produced them.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence you should find against the party making that claim or contention.

The Court instructs you that under Florida law Builders has the burden of proof to prove its claim for bad faith against Southern-Owners.

**Proceedings:**

The order of the trial's proceedings will be as follows:  In just a moment the lawyers for each of the parties will be permitted to address you in turn and make what we call their "opening statements."  Builders Insurance will then go forward with the calling of witnesses and presentation of evidence during what we call the  "case in chief."  When Builders Insurance finishes (by announcing "rest"), Southern-Owners Insurance will proceed with witnesses and evidence, after which, within certain limitations, Builders Insurance may be permitted to again call witnesses or present evidence during what we call the "rebuttal" phase of the trial.

When the evidence portion of the trial is completed, the lawyers will then be given another opportunity to address you and make their summations or final arguments in the case, after which I will instruct you on the applicable law and you will then retire to deliberate upon your verdict.

Now, we will begin by affording the lawyers for each side an opportunity to

make their opening statements in which they may explain the issues in the case and summarize the facts they expect the evidence will show.

I caution you that the statements that the lawyers make now (as well as the arguments they present at the end of the trial) are not to be considered by you either as evidence in the case or as your instruction on the law.   Nevertheless, these statements and arguments are intended to help you understand the issues and the evidence as it comes in, as well as the positions taken by both sides.  So I ask that you now give the lawyers your close attention as I recognize then for purposes of opening statements.

## PROPOSED JURY INSTRUCTION NO.

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case. When I have finished, you will go to the jury room and begin your discussions, sometimes called deliberations.

CITATION TO AUTHORITY:

Eleventh Circuit Pattern Jury Instruction No. 3.1- Introduction

Given:                        _____

Given as Modified:           _____

Refused:                      _____

Withdrawn:                    _____

## PROPOSED JURY INSTRUCTION No.

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law –and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision inany way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

CITATION TO AUTHORITY:

Eleventh Circuit Pattern Instruction (2013)
Basic Instruction 3.2.2 – The Duty to Follow Instructions – CorporateParty Involved

Given:              _____

Given as Modified:   _____

Refused:            _____

Withdrawn:          _____

## PROPOSED JURY INSTRUCTION No.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and is not binding on you.

You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There is no legal difference in the weight you may give to either direct or circumstantial evidence.

CITATION TO AUTHORITY:

Eleventh Circuit Pattern Instruction (2013)
Basic Instruction 3.3 – Consideration of Direct and Circumstantial Evidence;
Argument of Counsel; Comments by the Court

Given:                       _____

Given as Modified:           _____

Refused:                     _____

Withdrawn:                   _____

## PROPOSED JURY INSTRUCTION No.

When I say you must consider all the evidence, I do not mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point does not necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

CITATION TO AUTHORITY:

Eleventh Circuit Pattern Instruction (2013) Basic Instruction 3.4
– Credibility of Witnesses

Given:                    _____

Given as Modified:        _____

Refused: _____

Withdrawn: _____

## PROPOSED JURY INSTRUCTION No.

### <u>Impeachment of Witnesses Because of Inconsistent Statements</u>

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake does not mean a witness was not telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail. You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. Also, ask whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial.

CITATION TO AUTHORITY:

Eleventh Circuit Pattern Instruction (2013)
Basic Instruction 3.5.1 – Impeachment of Witnesses Because of Inconsistent Statements

Given:                        _____

Given as Modified:            _____

Refused:                      _____

Withdrawn:                    _____

**Proposed Jury Instruction No.**

**<u>Stipulations</u>**

Sometimes the parties have agreed that certain facts are true.  This agreement is called a stipulation.  You must treat these facts as proved for this case.

<u>Authority</u>:  <u>Eleventh Circuit Pattern Jury Instructions (Civil)</u> (2013), 2.1.

Given:                          _____

Given as Modified:       _____

Refused:                      _____

Withdrawn:                  _____

**Proposed Jury Instruction No.**
**Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Authority:  Eleventh Circuit Pattern Jury Instructions (Civil) (2013), 2.2.

Given:                          _____

Given as Modified:        _____

Refused:                       _____

Withdrawn:                   _____

**Proposed Jury Instruction No.**

**CONSENT**

**The issue for your determination is whether Builders obtained Southern-Owners consent before:**

**1)  Committing to pay $1 million to Ernest Guthrie;**

**If the greater weight of the evidence demonstrates that Builders did not obtain Southern-Owners consent before committing to pay $1 million to Ernest Guthrie then your verdict should be in favor of Southern-Owners.**

**"The greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.**

Authority:  *United Nat'l Ins. Co. v. Jacobs,* 754 F.Supp. 865, 870 (M.D.Fla.1990); *First American Title Insurance Co. v. National Union Fire Insurance Co.,* 695 So.2d 475 (Fla. 3d DCA 1997)

Given:                                _____

Given as Modified:              _____

Refused:                            _____

Withdrawn:                        _____

**Proposed Jury Instruction No.**

**Offer and Acceptance**

Builders contends that Southern-Owners could have settled Ernest Guthrie's claim within its $1 million policy limits but failed to do so. Southern-Owners asserts that it never had the opportunity to settle Ernest Guthrie's claim within its $1 million policy limits.

A settlement demand is an offer to enter into a contract of settlement.

Both an offer and acceptance are required to create a contract.

To establish that an offer was made, Builders must be proven that:

1. Guthrie communicated that he was willing to enter into a contract with Southern-Owners.

2. The communications contained the essential terms of the offer; and

3. Based upon the communications, Southern-Owners could have reasonably concluded that a contract with these terms would result if it accepted the offer.

In order for there to be acceptance of an offer, the terms of the acceptance must match the terms of the offer.

Thus, in order for Southern-Owners to have had an opportunity to settle Ernest Guthrie's claim within its $1 million policy limits, there must have been a demand (offer) to settle Ernest Guthrie's claim within the Southern-Owner's $1 million policy limits.

Authority: *Grant v. Lyons*, 17 So. 3d 708, 710 (Fla. 4th DCA 2009); See FL Pattern Jury Instructions 416.8- Contract Formation- Offer;

Given:                    _____

Given as Modified:  _____

Refused:                _____

Withdrawn:           _____

**PROPOSED JURY INSTRUCTION No.**

In this case, Plaintiff claims that Defendant acted in bad faith in not settling Ernest Guthrie's bodily injury claim against their common insured, Beck Construction, within its $1,000,000.00 limits of primary coverage, which caused Plaintiff to pay monies it should have not had to pay. Defendant denies Plaintiff's claims.

CITATION TO AUTHORITY:

Florida Standard Jury Instruction 404.2 — Summary of Claims or Contentions

*Vigilant Ins. Co. V. Continental Cas. Co*. 33 So.3d 734 (4th DCA 2010)

Given:            _____

Given as Modified:  _____

Refused:          _____

Withdrawn:        _____

## PROPOSED JURY INSTRUCTION No.

Bad faith on the part of an insurance company is failing to settle a claim when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward its insureds and with due regard for their interests.

**If the greater weight of the evidence does not support the claim of Builders, your verdict should be for Southern-Owners Insurance Company.**

**However, if the greater weight of the evidence does support the claim of Builders, your verdict should be for Builder's on the issue of "bad faith."**
**"The greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.**

**If you find for Southern-Owners Insurance Company, you will not consider the matter of causation of damages. But, if you find for Builders, then you must consider whether the bad faith caused Builder's to have to pay an amount greater than it would have had to pay absent the bad faith.**

Authority: *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783 (Fla. 1980).

Given:                          _____

Given as Modified:          _____

Refused:                       _____

Withdrawn:                   _____

## PROPOSED JURY INSTRUCTION No.

*An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps she might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.*

*The primary insurer owes the excess insurer the same good faith duties it owes to its insureds.*

CITATION TO AUTHORITY:

*Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980);
*Liberty Mutual Ins. Co. v. Davis*, 412 F. end 475 (5th Cir. 1969);
*Ging v. American Liberty Ins. Co*., 423 F.2d 115 (5th Cir. 1970);
*U.S. Fire Ins. Co. v/. Morrison Assurance Co*., 600 So.2d 1147 (Fla. 1st DCA 1992)

**Given:** _____

**Given as Modified:** _____

**Refused:** _____

**Withdrawn:** _____

**Proposed Jury Instruction No.**

**Legal Cause**

Bad faith is a legal cause of damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such damage, so that it can reasonably be said that, but for the bad faith, the damage would not have occurred.

<u>Authority:</u> *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 900 (Fla. 2010); Fla. Std. Jury Instr. (Civ.) 404.6(a).

**Given:** _____

**Given as Modified:** _____

**Refused:** _____

**Withdrawn:** _____

*PROPOSED JURY INSTRUCTION NO.*

### *Concurring cause:*

*In order to be regarded as a legal cause of [loss] [damage] [or] [harm] bad faith conduct need not be the only cause. Bad faith conduct may be a legal cause of [loss] [damage] [or] [harm] even though it operates in combination with [the act of another] [some natural cause] [or] [some other cause] if the bad faith conduct contributes substantially to producing such [loss] [damage] [or] [harm].*

*AUTHORITY:*

**Jury Instr. (Civ.) 404.6(b).**

**Given:** _____

**Given as Modified:** _____

**Refused:** _____

**Withdrawn:** _____

**PROPOSED JURY INSTRUCTION No. 9**

If your verdict is for Plaintiff, the Court will award damages in an amount allowable under Florida law.

CITATION TO AUTHORITY:

Florida Standard Jury Instruction 404.9

Given:                          _____

Given as Modified:        _____

Refused:                        _____

Withdrawn:                   _____

## PROPOSED JURY INSTRUCTION No.

In this case it is the responsibility of Plaintiff to prove every essential part of its claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion".

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the claim or a contention by a preponderance of the evidence, you should find against the party making the claim or contention.

CITATION TO AUTHORITY:

Eleventh Circuit Pattern Instruction (2013)
Basic Instruction 3.7.1 – Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

Given:                          _____

Given as Modified:          _____

Refused:                       _____

Withdrawn:                    _____

## PROPOSED JURY INSTRUCTION No.

*In this case, the Defendant asserts the affirmative defense[s] of lack of consent. Even if the Plaintiff proves its claim by a preponderance of the evidence, the Defendant can prevail in this case if it proves an affirmative defense by a preponderance of the evidence. I caution you that the Defendant does not have to disprove the Plaintiff's claim, but if the Defendant raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.*

CITATION TO AUTHORITY:

Eleventh Circuit Pattern Instruction (2013)
Basic Instruction 3.7.1 – Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence
Given:                          _____

Given as Modified:        _____

Refused:                      _____

Withdrawn:                 _____

## PROPOSED JURY INSTRUCTION No.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any Electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

CITATION TO AUTHORITY:

Judicial Conference Committee on Court Administration and Case Management's Model Jury Instruction for the Use of Electronic Technology to Conduct Research on or Communicate About a Case

Given:               _____

Given as Modified:   _____

Refused:             _____

Withdrawn:           _____

## PROPOSED JURY INSTRUCTION No.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you will never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors.  So, you must discuss the case with one another and try to reach an agreement. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs just because others think differentlyor because you simply want to get the case over with.

Remember that, in a very real way, you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

CITATION TO AUTHORITY:

Eleventh Circuit Pattern Instruction (2013)
Basic Instruction 3.8.2 – Duty to Deliberate When Damages Not at Issue

Given:                          _____

Given as Modified:         _____

Refused:                       _____

Withdrawn:                   _____

**PROPOSED JURY INSTRUCTION No.**

When you get to the jury room, choose one of your members to act as foreperson.

The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict.]

Take the verdict form with you to the jury room. When you have all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you will return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I will respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

CITATION TO AUTHORITY:

Eleventh Circuit Pattern Instruction (2013) Basic Instruction 3.9 –
Election of Foreperson, Explanation of Verdict Form

Given:                        _____

Given as Modified:            _____

Refused:                      _____

Withdrawn:                    _____