IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-cv-81357

AMERICAN BUILDERS
INSURANCE COMPANY,

      Plaintiff,

v.

SOUTHERN-OWNERS
INSURANCE COMPANY,

      Defendant.

_____/

## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

COMES NOW, Defendant, Southern-Owners Insurance Company ("Southern-Owners") by and through undersigned counsel, pursuant to FRCP 50(b) and FRCP 59, and files this Renewed Motion for Judgment as a Matter of Law, or in the alternative, Motion for a New Trial, and as grounds in support thereof states as follows:

1.     This case was tried before a jury from August 2, 2021, through August 4, 2021.

2.     On August 4, 2021, the jury returned a verdict in favor of the Plaintiff, American Builders Insurance Company ("Builders"), finding that Southern-Owners acted in bad faith by not settling Ernest Guthrie's claim against Beck Construction.

3.     During trial, Southern-Owners moved for judgment as a matter of law. Those motions were denied by the Court.

4.      Southern-Owners now files a renewed Motion for Judgment as a Matter of Law.

5.      In the alternative, Southern-Owners moves this Court for a new trial as the verdict in this case is contrary to the manifest weight of the evidence

6.      A district court judge has discretionary power and authority to grant a new trial if the verdict is contrary to the manifest weight of the evidence. See *Hirsch v. Nova Se. Univ.*, No. 04-60068-CIV, 2006 WL 8445739, at *1 (S.D. Fla. Aug. 15, 2006).

7.      As noted above, the verdict in this case is contrary to the manifest weight of the evidence.

8.      Specifically, the manifest weight of the evidence demonstrated that:

   a. The claim could not have been settled by the tender of the Southern-Owner's policy limits; and

   b. Builders, standing in the shoes of Beck, breached the conditions of the policy by assuming an obligation to issue payment in settlement of the claim without Southern-Owner's consent.

9. Therefore, this Court should order a new trial.

## MEMORANDUM OF LAW

Rule 50(b) of the Federal Rules of Civil Procedure provides that if the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the movant may file a renewed motion for judgment as a matter of law, and may include an alternative or joint request for new trial under Rule 59. Therefore, Southern-Owners files

2

this renewed motion for judgment as a matter of law, or in the alternative, motion for new trial.

Rule 59 of the Federal Rules of Civil Procedure provides the trial court with discretion to grant a new trial. Rule 59(a) authorizes the grant of a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in federal court." *Fed. R. Civ. P.* 59(a). Courts have recognized that a new trial may be warranted by a verdict that is against the weight of the evidence. See *Hirsch, supra, at 1.* The relevant question for the court to consider is not whether there was any evidence to support the jury verdict, but whether the verdict is against the manifest weight of the evidence. See *North v. Altech Yachts, Inc.*, 815 So. 2d 643, 646 (Fla. 4th DCA 2002).

In the case at hand, the jury verdict finding that Southern-Owners acted in bad faith in failing to settle Ernest Guthrie's claim against Beck Construction is against the manifest weight of the evidence presented at trial. Specifically, the manifest weight of the evidence demonstrated that:

        a. The claim could not have been settled by the tender of the Southern-Owner's policy limits; and

        b. Builders, standing in the shoes of Beck, breached the conditions of the policy by assuming an obligation to issue payment in settlement of the claim without Southern-Owner's consent.

3

I.      **The manifest weight of the evidence demonstrated that the claim could not have been settled by the tender of the Southern-Owner's policy limits.**

Under Florida law, an insurance company acts in bad faith in *failing to settle a claim when, under all the circumstances*, it *could* and should have done so, had it acted fairly and honestly toward its insured and with due regard for their interests. *State Farm Mut. Auto. Ins. Co. v. Laforet,* 658 So.2d 55, 62 (Fla.1995)(emphasis added). In the case at hand, the manifest weight of the evidence demonstrated that Southern-Owners could not have settled Ernest Guthrie's claim against Beck Construction. Thus, the manifest weight of the evidence demonstrated that Southern-Owners did not act in bad faith in failing to settle the claim against Beck Construction.

The undisputed evidence in the case demonstrated that:

1.      On September 5, 2019, Ernest Guthrie's counsel sent Builders a thirty-day time limit demand, demanding payment of its $1 million policy limits *conditioned* on there being no other insurance available to Beck Construction. [Joint Trial Exhibit 3].

2.      At the end of September 2019, Mr. Guthrie's counsel was advised of potential coverage for Beck Construction under both the Southern-Owner's policy issued to Guthrie, as well as an excess liability policy issued to Beck Construction by Evanston Insurance Company ("Evanston"). [Joint Trial Exhibit 8].

3.      On October 2, 2019, Mr. Guthrie's counsel changed the terms of the September 5th demand to be a demand to Builders for payment of its $1 million policy limits in exchange for a partial release of Beck Construction, with the ability to pursue other insurance. [Joint Trial Exhibit 8].

4.      On November 18, 2019, Mr. Guthrie's counsel made a new time limit demand, demanding payment of $1 million from Builders and $1 million from Evanston for a total payment of $2 million. [Joint Trial Exhibit 12].

5.      Mr. Guthrie's counsel did send any of these demands to Southern-Owners, nor did he make any demands for the Southern-Owners policy limits.  [DE 130, Joint Stipulation of Facts to be read to the Jury, Stipulated fact #32].

The testimony of Mr. Guthrie's counsel, Stuart Cohen, Esq., clearly demonstrates that Southern-Owners could not have settled Mr. Guthrie's claim against Beck Construction. [Exhibit A, Redacted deposition transcript of Stuart Cohen].[1]

Mr. Cohen testified that on September 5, 2019, he sent a demand to Builders for payment of their $1 million policy limits to settle Mr. Guthrie's claims against Beck Construction. [Exhibit A, p. 15, L 4-7, p. 16, L 15-24]. The offer to settle for $1 million was based upon the understanding that Beck Construction only had $1 million in coverage. [Exhibit A p. 16, L 24-p. 17, L4].

Mr. Cohen testified that prior to the deadline for the September 5th demand, Mr. Cohen was advised that Beck Construction had another $1 million in coverage under an excess or umbrella policy. [Exhibit A, p. 17, L 11-17]. After receiving this information, Mr. Cohen advised Builders that Mr. Guthrie would only accept payment of Builder's $1 million in exchange for a release that preserved his right to pursue any other coverage. [Exhibit A, p. 23, L 22-25, p. 24, L1-5]. Mr. Cohen testified that once he learned that

---

[1] The redacted deposition of Stuart Cohen, Esq. was played for the jury at trial.

Beck Construction had additional coverage, Mr. Guthrie was not willing to settle his claim for payment of only $1 million. [Exhibit A, p. 21, L 5-8].

Mr. Cohen testified that on November 18, 2019, he made a demand for $2 million, which included $1 million from Builders and $1 million from Evanston. [Exhibit A, p. 27, L6-15, p. 28, L2-8]. Mr. Cohen testified that per the terms of his November 18th demand, Mr. Guthrie would only sign a complete release of Beck Construction if there was payment by ***both Builders and Evanston of each of their $1 million policy limits***. (emphasis added). [Exhibit A p. 28, L21-25]. He testified that if Evanston sent money, but Builders did not, he would not have had Guthrie execute a complete release. Likewise, if Builders sent money and Evanston did not, he would not have had Guthrie execute a complete release. [Exhibit A, p. 28, L 21-25, p. 29, L 1]. Thus, the only way that Guthrie would execute a complete release was if he received payment of $1 million from Builders and $1 million from Evanston.

Mr. Cohen testified that at the time he sent the November 18th demand letter he was aware of the Southern-Owners policy. [Exhibit A, p. 29, L 5-6; 21-25].

Thus, the testimony of counsel for Mr. Guthrie clearly demonstrates that the only way that Mr. Guthrie would settle his claim in exchange for a complete release of Beck Construction was if there way payment of $1 million from Builders and $1 million from Evanston. Therefore, the testimony of counsel for Mr. Guthrie, the injured claimant, clearly demonstrates that Southern-Owner's could not have settled the claim by payment of its policy limits. Thus, the manifest weight of the evidence demonstrates that Southern-Owners could not have settled Ernest Guthrie's claim. Therefore, Southern-

6

Owners could not have acted in bad faith in failing to settle Mr. Guthrie's claim. See *RLI Ins. Co. v. Scottsdale Ins. Co.*, 691 So. 2d 1095, 1096 (Fla. 4th DCA)(Affirming summary judgment in favor of primary insurer finding correspondence between counsel for the injured plaintiff and the insurers, and the depositions taken in this case, particularly that of counsel representing the injured plaintiff, show beyond any doubt that the primary insurer at no time missed an opportunity to settle which would have put it in a bad faith posture.)

Based upon the above, it is clear that the the jury's verdict, finding that Southern-Owners acted in bad faith in failing to settle Ernest Guthrie's claim against Beck Construction, is against the manifest weight of the evidence.

Therefore, this Court should grant Southern-Owner's Motion for New Trial.

**II.** **The manifest weight of the evidence demonstrated that Builders, standing in the shoes of Beck Construction, assumed an obligation to pay $1 million in settlement of Ernest Guthrie's claim against Beck Construction, without Southern-Owner's consent and in material breach of the policy**

In response to Builder's Complaint, Southern-Owners asserted as an Affirmative Defense that it had no obligation to issue payment because Builders, standing in the shoes of Beck Construction, materially breached the terms of the Southern-Owner's policy. The terms of the Southern-Owner's policy at issue state:

> SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS
>
> > 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit
> >
> > . . .

7

> d. No insured will, ***except at that insured's own cost, voluntarily make a payment, assume any obligation***, or incur any expense, other than for first aid, ***without our consent***. (emphasis added).

The manifest weight of the evidence at trial demonstrated that Builders, standing in the shoes of Beck Construction, agreed to issue payment of $1 million in settlement of Mr. Guthrie's claims against Beck Construction without obtaining Southern-Owner's consent.

There were several communications between counsel for Builders, Doug McIntosh, Esq., and counsel for Mr. Guthrie in which Builder's offered to pay its $1 million, without obtaining Southern-Owner's consent. According to the testimony of Mr. McIntosh, on October 14, 2019, he, on behalf of Builders, sent correspondence to counsel for Mr. Guthrie offering to pay $1 million to settle Mr. Guthrie's claim. [Exhibit B, Excerpt of trial testimony, Cross and redirect examination of Doug McIntosh, p. 10, l 4-20]. There was no record evidence presented at trial that Southern-Owners was made aware of this offer, or that Builders obtained Southern-Owners consent before making this offer to issue payment.

Additionally, on December 17, 2019, Mr. McIntosh advised Mr. Guthrie's counsel that Builders was tendering its $1 million policy limits in response to his November 18th demand. [Exhibit B, p. 18, L 2-25, p. 19. L 1-6; Defendant's trial Exhibit F, Letter from McIntosh to Stuart Cohen dated 12/17/19]. Mr. McIntosh testified that he advised Mr. Guthrie's counsel that Builders was tendering its $1 million policy limits in response to his November 18th demand prior to having any discussion with Southern-Owners, or

8

counsel for Southern-Owners, as to whether Southern-Owners would consent to this settlement agreement. [*Id.*]

Thus, the manifest weight of the evidence demonstrates that Builders agreed to the settlement, i.e. assumed an obligation to pay $1 million, without Southern-Owner's consent.

Furthermore, Builder's stipulated to the fact that it never obtained Southern-Owners consent prior to issuing payment of $1 million in response to the November 18, 2019, demand. [DE 130, Joint Stipulation of Facts to be read to the Jury, #48].

The above actions were a material breach of the terms of the Southern-Owner's policy.   Therefore, Southern-Owner should not be responsible for satisfying the agreement. *See United Nat'l Ins. Co. v. Jacobs,* 754 F.Supp. 865, 870 (M.D.Fla.1990) (Finding that by entering into settlement agreement without the insurer's consent, insured breached the terms of the policy and insurer was not responsible for satisfying the agreement.)

In *First American Title Insurance Co. v. National Union Fire Insurance Co.,* 695 So.2d 475 (Fla. 3d DCA 1997), National Union was the insurer for FATCOF. FATCOF notified National Union of potential claims against it by First American. National Union denied the claims, asserting a policy exclusion. However, National Union instructed FATCOF to notify it if any suit was filed, so that it could re-evaluate its coverage position and determine whether it owed a defense.

First American ultimately brought suit against FATCOF. FATCOF did not notify National Union of the suit and agreed to have a consent judgment entered against it.

9

FATCOF did not seek National Union's permission to enter into the consent judgment. National Union refused to issue payment on the consent judgment, and suit was filed against it for breach of contract.

National Union moved for summary judgment asserting that FATCOF breached the policy's cooperation clause, relieving National Union of any obligations under the policy. The policy contained a cooperation clause which required FATCOF to "not admit liability for or settle a claim . . .without written consent of the [insurer]." The policy also contained a "no action" provision, which stated, "no action shall lie against the Company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy. . .". The trial court granted National Union's motion for summary judgment. FATCOF appealed.

On appeal the Third DCA agreed with the trial court, finding that the insured's failure to comply with the relevant policy provisions relived the insurer of its obligations under the policy and precluded the action against the carrier as a matter of law.

In the case at hand, on September 12, 2019, Builders notified Southern-Owners of a September 5, 2019, time limit demand made by Mr. Guthrie to Builders, demanding payment of $1 million to settle Mr. Guthrie's claim against Beck Construction, conditioned on their being no other insurance. Upon receipt of the September 5th demand, Southern-Owners contacted counsel for Guthrie and requested several extensions of time to provide its response to the demand. The last request sought an extension until December 20, 2019.

Unbeknownst to Southern-Owners, on November 18, 2019, Guthrie's counsel made a subsequent demand for payment of $1 million from Builders and $1 million from Evanston, for a total of $2 million. Neither Guthrie's counsel nor Builders sent a copy of this demand to Southern-Owners. As noted above, on December 17, 2019, counsel for Builders, Mr. McIntosh, advised counsel for Guthrie that Builders was tendering its $1 million limits in response to the November 18th demand. That same day, Mr. McIntosh requested that Mr. Guthrie's counsel send a copy of his w-9 and instructions for payment.

On December 18, 2019, after Builders had already agreed to the settlement demand, Builders contacted counsel for Southern-Owners and advised them of the November 18th demand. As noted above, Mr. McIntosh admitted that as of December 17th, when he advised Mr. Guthrie's counsel that Builder's was tendering its $1 million limits, he had no information as to Southern-Owner's position on the claim, and had not obtained the consent of Southern-Owners to enter into any settlement agreement.

Thus, the manifest weight of the evidence demonstrates that Builders entered into the settlement agreement, i.e. assumed an obligation to issue payment of $1 million, without Southern-Owner's consent. This was a material breach of the terms of the Southern-Owner's policy.

Therefore, the manifest weight of the evidence supports the conclusion that Southern-Owners should have been relieved of its obligations under the policy.

11

## CONCLUSION

Based upon the above, it is clear that the verdict in this case is contrary to the manifest weight of the evidence presented at trial. Therefore, this Court should grant Southern-Owner's Renewed Motion for Directed Verdict, or in the alternative, grant Southern-Owner's Motion for New Trial.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the forgoing has been filed through the CM/ECF filing system which will provide copies to Richard Benrubi, Esq., (RBenrubi@benrubilaw.com; cgarcia@benrubilaw.com) counsel for American Builders, this 20th day of August, 2021.

> /s/ Carri S. Leininger, Esq.
> Carri S. Leininger, Esq.
> Service to: eservice@wlclaw.com
> Florida Bar No. 0861022
> Jessica L. Gregory, Esq.
> Florida Bar No. 92019
> Attorney for Defendant Southern-Owners
> Williams, Leininger & Cosby, P.A.
> 11300 US Highway One, Suite 300
> North Palm Beach, Florida 33408